**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| A.L.L. MASONRY CONSTRUCTION CO., INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BOGUSLAW OMIELAN and IZABELA OMIELAN, ) <br> ) <br> Defendants. ) | No. 07 C 5761 <br><br> Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Plaintiff A.L.L. Masonry Construction Co., Inc. and Jerry Ryce Masonry, Inc. are masonry contractors who routinely compete with one another for work on construction projects. In 2006, the owner of a property located at 525 Kedzie Street in Evanston, Illinois, requested bids for construction of a six-floor residential building on the property (the "Kedzie Project"). The masonry work for the project was ultimately awarded to Jerry Ryce Masonry, which is run by Defendants Boguslaw Omielan and his daughter, Izabela. Plaintiff claims that the only reason Jerry Ryce, rather than Plaintiff, won the contract is Jerry Ryce's practice of paying artificially depressed wages to its workers, many of whom are aliens unauthorized to work in the United States. According to Plaintiff, Defendants hired these aliens knowing that they were both unauthorized for work in the United States and that they were brought into the country in violation of federal immigration law. Plaintiff brought suit under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), claiming that Defendants ran an illegal enterprise that harmed Plaintiff by preventing it from winning the contract for the Kedzie Project. Defendants now move for summary judgment, arguing that the evidence does not establish a RICO violation. For the reasons that follow, Defendants' motion is granted.

## FACTS

Defendant Boguslaw Omielan purchased Jerry Ryce Company, Inc., a construction company, in 2002. (Defs.' Reply ¶ 21.) Boguslaw divided the company into two businesses: Jerry

Ryce Masonry, Inc. and Jerry Ryce Builders, Inc.[1] (*Id.*) Boguslaw runs both companies with his daughter, Defendant Izabela Omielan, and Barbara Kasper. (Pl.'s 56.1 ¶¶ 24, 26.) Prior to the filing of this lawsuit, Jerry Ryce Masonry generally designated its workers as "employees" and Jerry Ryce Builders classified its workers as "subcontractors." (*Id.* ¶ 23.) Plaintiff alleges in its complaint that there was no practical distinction between the two categories and the classification was merely an attempt to get around the immigration laws, as Jerry Ryce hired a number of unauthorized Polish immigrants to act as "independent contractors." (Compl. ¶ 17.) Specifically, Plaintiff points out that Jerry Ryce did not require any of its workers to fill out an Employment Eligibility Verification, or "I-9," form prior to the time this lawsuit was filed. (Pl.'s 56.1 ¶ 42.) Employers are required by law to have employees, but generally not independent contractors, complete an I-9 form to demonstrate that the employees are authorized to work in the United States. 8 U.S.C. § 1324a(b). Furthermore, Plaintiff argues that Defendants knew that their employees and "independent contractors" were likely to be unauthorized immigrants, because Jerry Ryce targeted the immigrant community, running advertisements for workers exclusively in Polish-language newspapers. (Pl.'s 56.1 ¶ 25.) Boguslaw also admitted that he sometimes hired workers at the gas station "where they wait," another common method for finding unauthorized workers. (*Id.*)

Plaintiff deposed a number of current and former Jerry Ryce employees, and obtained written statements from others.[2] Many of the employees refused to answer questions about whether they were authorized to work in the United States.[3] Several others admitted that they were

---

[1]  Unless otherwise specified, the term "Jerry Ryce" applies to both entities.

[2]  Defendants object to the admission of many of these statements, as they are unnotarized. *See* FED. R. CIV. P. 56(e) (factual assertions should be made in affidavits). The statements are, however, made "under the penalty of perjury," which is sufficient for this court to consider the statements. *See Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).

[3]  The parties dispute whether this silence permits the drawing of an adverse inference against Defendants, an issue that the court need not resolve in this case.

unauthorized at the time they worked for Jerry Ryce. (*Id.* ¶¶ 1-4.) One employee, Krzysztof Kwas, stated that he called Boguslaw in 2007 to ask about work. (Kwas Decl. ¶ 4, Ex. G to Pl.'s 56.1.) Boguslaw asked Kwas if he was authorized to work in the United States; Kwas told him he was not, but he was hired anyway. (*Id.* ¶ 6.) Other employees, such as Grzegorz Breda, did not recall ever discussing their work authorization with Defendants. (Breda Dep. at 22, Ex. C to Pl.'s 56.1.) According to Kasper, every Jerry Ryce employee spoke Polish, many did not speak English, and many were friends of Boguslaw. (Pl.'s 56.1 ¶ 50.) Neither party has produced any evidence that either Defendant knew whether the Jerry Ryce employees entered the United States legally, although several former employees testified that they originally entered on a tourist visa. (*Id.* ¶¶ 1-4.)

On April 19, 2006, Plaintiff submitted a bid for $666,185 for the masonry work on the Kedzie Project to Tishman Construction Corporation, the general contractor for the Project.[4] (Defs.' 56.1 ¶ 6; Ex. A to Ornoff Decl., Ex. V to Pl.'s 56.1.) According to Neil Ornoff, the owner of the property located at 525 Kedzie, Tishman recommended that Plaintiff receive the contract to conduct masonry work, as it had provided the lowest bid. (Ornoff Decl. ¶ 4, Ex. V to Pl.'s 56.1.) Several weeks later, Ornoff fired Tishman and took over the general contractor responsibilities on his own, in an effort to control costs on the project. (*Id.* ¶ 5.) Ornoff, who had previously used Jerry Ryce for masonry work, then invited Jerry Ryce to submit a bid on the project, but did not invite Plaintiff to submit another bid. (Defs.' 56.1 ¶¶ 12, 14.) Jerry Ryce's final bid on the project was for $518,300, nearly $150,000 less than Plaintiff's bid to Tishman. (*Id.* ¶ 15.) Ornoff accepted this bid in November 2006, and Jerry Ryce was awarded the contract. (*Id.*)

---

[4] Plaintiff stated in its Local Rule 56.1 statement that its bid was $668,185, but a review of the actual bid sheet show that the bid was actually $666,185. (*Compare* Pl.'s 56.1 ¶ 56 *with* Ex. A to Ornoff Decl., Ex. V to Pl.'s 56.1.)

3

Plaintiff brought suit[5], alleging that Defendants violated RICO by conducting an enterprise engaged in racketeering activity and that Defendants conspired to violate RICO. Plaintiff claims that Defendants violated section 274 of the Immigration and Nationality Act by knowingly hiring at least ten unauthorized employees who were illegally brought into the United States, which constitutes racketeering under RICO. The court granted Defendants' motion to dismiss the claim that Defendants misclassified their workers for tax purposes, but denied the motion in all other respects. (2/1/08 Minute Order [26].) On December 9, 2008, Defendants moved for summary judgment against A.L.L. Masonry.

## DISCUSSION

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The court will view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 473 (7th Cir. 2008). "Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion," however. *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir.2004).

**I.    1962(c)**

The Complaint alleges violations of section 1962(c) of RICO. To prove such a violation, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). In their motion for summary judgment, Defendants dispute only the final two elements; that is, they urge that Plaintiff

---

[5]    An additional Plaintiff, U.S. Masonry, Inc., also sued Defendants regarding another contract that it claims it would have been awarded, if not for Defendants' illegal employment practices. Defendants seeks summary judgment only against A.L.L. Masonry, however, and all references to "Plaintiff" are to A.L.L. Masonry.

4

cannot establish that Defendants engaged in a "pattern of racketeering activity." 18 U.S.C. § 1962(c). Under the terms of the statute, a "'pattern of racketeering activity' requires at least two acts of racketeering activity" that occurred within ten years of each other. 18 U.S.C. § 1961(5). Defendants argue that Plaintiff has not raised a genuine dispute that Defendants engaged in any racketeering activity. Plaintiff's claim rests on the RICO provisions which define, as a racketeering activity, "any act which is indictable under the Immigration and Nationality Act, section 274." 18 U.S.C. § 1961(1)(F). This includes violations of 8 U.S.C. § 1324(a)(3)(A), which makes it illegal for anyone, "during any 12-month period," to "knowingly hire[] for employment at least 10 individuals with actual knowledge that the individuals are [unauthorized] aliens." 8 U.S.C. § 1324(a)(3)(A). Defendants contend that Plaintiff cannot prove either that Defendants actually did employ ten unauthorized workers during any given twelve-month period, or that Defendants acted with actual knowledge of the workers' status. The court declines to address whether Defendants actually employed ten unauthorized workers during separate twelve month periods because the court concludes, as explained below, that Plaintiff has failed to create a genuine dispute that Defendants acted with the required level of knowledge.

Section 1324 prohibits individuals from "knowingly hir[ing] for employment at least 10 individuals with actual knowledge that the individuals are aliens described in subparagraph (B)." 8 U.S.C. § 1324(a)(3)(A). Subparagraph (B) applies to any alien who "(i) is an unauthorized alien [as defined in 8 U.S.C. § 1324a(h)(3)], and (ii) has been *brought into* the United States in violation of this subsection."[6] *Id.* § 1324(a)(3)(B) (emphasis added). To violate the statute, then, an individual must have knowledge of two things: first, that the alien he hired is not "lawfully admitted for permanent residence" or otherwise lawfully "authorized to be so employed," *id.* § 1324(a)(3)(B)(i)

---

[6] The statute uses various tenses of the verb "to bring," including "bringing in," "brings to," and "brought into." For purposes of this opinion, the court considers the verb to have the same essential meaning regardless of the tense, and the court uses them interchangeably.

(citing *id.* § 1324a(h)(3)); second, that the alien was brought into the United States in violation of § 1324(a). *Id.* § 1324(a)(3)(B)(ii); *see also Hager v. ABX Air, Inc.*, No. 2:07-cv-317, 2008 WL 819293, at *12 (S.D. Ohio Mar. 25, 2008).

The first interpretive question presented by this statutory scheme is: to what subsection does the statute refer when it applies to aliens who are "brought into the United States in violation of *this subsection*"? 8 U.S.C. § 1324(a)(3)(B)(ii) (emphasis added). Defendant contends that "this subsection" refers to § 1324(a)(3), which prohibits employers from knowingly hiring unauthorized aliens. Defendants' interpretation would require a showing that the defendant "knew the [alien] was brought into the United States illegally *for the purposes of illegal employment*." *Trollinger v. Tyson Foods*, 543 F. Supp. 2d 842, 846 n.2 (E.D. Tenn. 2008) (emphasis added). The court disagrees with this interpretation. First, the usual meaning of the term "subsection" in the statutory context would be to the next smallest division of the section—in § 1324, then, § 1324(a) would be the subsection. Indeed, the statute itself suggests that this is the proper reading: § 1324(a)(3)(A) refers to "subparagraph (B)," which would logically suggest that (a)(3) is the paragraph—not the subsection—of which (A) and (B) are *sub*paragraphs. *See Hager*, 2008 WL 819293, at *12 ("Properly labeled . . . § 1324(a)(3) is a *paragraph*, not a *subsection*."); *see also Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004) ("Congress ordinarily adheres to a hierarchical scheme in subdividing statutory sections."). The legislative history also accords with this understanding. *See* H.R. REP. NO. 104-828, at 204 (1996) (Conf. Rep.) ("This provision creates a new offense for an employer to hire an alien who the employer knows is not authorized to be employed in the United States, and who the employer also knows was brought into the United States in violation of INA section 274(a)."). The court therefore concludes that "this subsection" in § 1324(a)(3)(B)(ii) refers to all of § 1324(a). *Accord Hager*, 2008 WL 819293, at *12; *Brewer v. Salyer*, No. CV F 06-01324 AWI DLB, 2007 WL 1454276, at *8 (E.D. Cal. May 17, 2007); *Williams v. Mohawk Indus., Inc.*, 314 F. Supp. 2d 1333, 1346 (N.D. Ga. 2004), *rev'd in part on other grounds*

411 F.3d 1252 (11th Cir. 2005); *but see Trollinger*, 543 F. Supp. 2d at 846; *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 309 (D.N.J. 2005); *Sys. Management, Inc. v. Loiselle*, 91 F. Supp. 2d 401, 408 (D. Mass. 2000).

Although Plaintiff's interpretation of "subsection" is correct, Plaintiff misinterprets the meaning of subparagraph (B). In particular, Plaintiff appears to argue that *any* violation of subsection (a) satisfies § 1324(a)(3)(B)(ii), but by its express terms, that provision only applies to aliens who are "brought into the United States" in violation of subsection (a). 8 U.S.C. § 1324(a)(3)(B)(ii); *see also Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 387 (2d Cir. 2001) ("an essential element of § 1324(a)[(3) is] that [the defendant have] actual knowledge that the illegal aliens it hired were brought into the country in violation of the statute"). Not all of the prohibited conduct outlined in subsection (a) relates to the "bringing in" of unauthorized aliens. *See* 8 U.S.C. § 1324(a)(1)(A)(ii) (transporting unauthorized aliens within the United States); *id.* § 1324(a)(1)(A)(iii) (harboring unauthorized aliens). In addition to the obvious import of the language in the statute, the Conference Report of the United States House of Representatives confirms that, "[i]n order to be liable under this provision, the employer must have actual knowledge both of the alien's unauthorized status and of the fact that the alien was brought into the United States illegally." H.R. REP. NO. 104-828, at 204 (1996) (Conf. Rep.).

Before addressing the evidence of Defendants' knowledge, the court notes that in the circumstances of this case, it is not even clear that ten of Defendants' employees were brought into the United States in violation of § 1324(a). Based on their deposition testimony, it appears that a number of these employees came to the country legally. Grzegorz Breda, Jan Dynak, Virgilijus Gapsys, and Kryzstof Kwas, for instance, all came to the United States on tourist visas. (Pl.'s 56.1 ¶¶ 1-4.) Plaintiff argues that the assistance friends and family provided to these individuals constitutes "bringing in" for the purposes of § 1324(a). This is a strained reading of the term "bring in," however, and confuses "bringing in" with "harboring." Section 1324(a) prohibits both bringing

7

in and harboring aliens, but the language of § 1324(a)(3)(B) makes clear that the penalties for employment of unauthorized aliens apply only when the employees are brought into the country illegally. *Compare* 8 U.S.C. § 1324(a)(1)(A)(i) (punishing anyone who knowingly "brings to or attempts to bring to the United States in any manner whatsoever" an unauthorized alien) *with id.* § 1324(a)(1)(A)(iii) (punishing anyone who knowingly "conceals, harbors, or shields from detection" an unauthorized alien). At most, Plaintiff has shown that some of Defendants' employees may have been harbored in violation of § 1324(a), but not that at least ten in separate years were illegally brought into the country.

Resisting this result, Plaintiff urges the court to conclude that these employees actually were brought into the country illegally because they entered the country by committing visa fraud. Plaintiff's theory is that coming into the country on a tourist visa but intending to work constitutes "visa fraud" and is within the broad language of § 1324(a)(1)(A)(i), which applies to those who "bring to the United States *in any manner whatsoever* [an alien] at a place other than a designated port of entry." 8 U.S.C. § 1324(a)(1)(A)(i) (emphasis added). Plaintiff's use of the term "visa fraud" is somewhat confusing, but seems to imply that the workers brought *themselves* into the country illegally, but "one cannot 'bring' oneself in within the meaning of the statute." *United States v. One 48 Ft. White Colored Sailboat Named "Libertine,"* 24 F. Supp. 2d 174, 180 (D.P.R. 1998). A separate statute, § 1325, covers the illegal entry of the aliens themselves. 8 U.S.C. § 1325(a)(3) (making it a felony for any alien to "attempt[] to enter or obtain[] entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact"). Therefore, to the extent that Plaintiff's claim of visa fraud requires the court to conclude that the aliens, by lying on their visa applications, brought themselves into the country in violation of § 1324(a), Plaintiff's theory must fail. *One 48 Ft. White Colored Sailboat*, 24 F. Supp. 2d at 180 ("It is evident that § 1324 deals with the *smuggling* of aliens as opposed to the *illegal entry* of an alien[,] which is proscribed by § 1325.").

Plaintiff's "visa fraud" theory fail for two additional reasons. First, it is not clear that all of the unauthorized workers involved here possessed the intent to violate their tourist visas when they originally entered the United States; they may well have developed that intent later, after legally entering the country. Second, the motivation of an alien entering the United States is generally irrelevant as to whether he is brought into the country illegally. If a third party helps an alien fill out paperwork for a tourist visa, knowing that the alien intends to stay and work, that *may* qualify as bringing an alien to the United States in violation of the statute. *Cf. United States v. Thiongo*, 344 F.3d 55, 58 (1st Cir. 2003) (affirming conviction under § 1324(a) where defendant fraudulently obtained tourist visas for aliens). Plaintiff has presented no evidence of such assistance from third parties, however; the most it can show is that some employees received assistance after they legally entered the United States on valid tourist visas. Again, this may violate the harboring provisions of § 1324(a), but not the "bringing in" provisions. Accordingly, to show a violation of the "bringing in" clause, Plaintiff would have to show that some third party helped Plaintiff obtain a fraudulent tourist visa, knowing that the alien intended to work; Plaintiff has no evidence of any such activity.

The cases cited by Plaintiff do not establish that the conduct alleged here does in fact constitute "bringing in" under § 1324(a). Plaintiff claims that the visa fraud in *United States v. Gasanova*, 332 F.3d 297 (5th Cir. 2003) was "precisely this type of conduct" (Pl.'s Resp. at 14), but in that case the defendants falsified visa applications, thus violating § 1324(a)(2)'s prohibition against knowingly bringing an unauthorized alien to the United States. *Gasanova*, 332 F.3d at 298. As noted above, Plaintiff has produced no evidence that any of Defendant or its employees did in fact falsify their visa applications in order to enter the country illegally; that is mere speculation by Plaintiff and insufficient to preclude summary judgment. Plaintiff also cites *United States v. Francisco*, 30 Fed. Appx. 48 (4th Cir. 2002), in which the defendant was convicted of "transporting illegal aliens for financial gain, in violation of 8 U.S.C.A. § 1324(a)(1)(A)(ii), (a)(1)(B)(i)." *Id.* at 49.

9

The court in *Francisco* observed that "the plain language of § 1324(a)(1)(A)(ii) applies where . . . an alien enters the United States on a tourist visa and illegally stays after the visa expired." *Id.* at 49. The Fourth Circuit's observation is of course accurate, but it is simply irrelevant to this case because § 1324(a)(1)(A)(ii), the provision cited in *Francisco*, does not require that an alien be "brought into" the country illegally; § 1324(a)(3) does. Indeed, the Fourth Circuit recognized as much, as it rejected defendant's argument that § 1324(a)(1)(A)(ii) requires that the alien enter the country illegally. *Id.* In sum, the depositions and statements gathered by Plaintiff do not satisfy the court that at least ten unauthorized aliens were brought into the country illegally in any given year.

Moreover, as Defendants urge, even if this court were to conclude that at least ten of Defendants' employees were illegally brought into the country, Plaintiff can prevail only if there is evidence from which a jury could find that Defendants had actual knowledge of the illegal entry. § 1324(a)(3)(B)(ii). Analysis of this question turns, again, on the interpretations of certain statutory terms. Plaintiff first argues that "actual knowledge" may be proven by constructive knowledge, or "willful blindness," and that Defendants had knowledge that the aliens were illegally brought into the country because they "consciously avoided obtaining actual knowledge" that the aliens were illegally brought in. *United States v. Rodriguez*, 53 F.3d 1439, 1447 (7th Cir. 1995). The Seventh Circuit has not directly addressed the "actual knowledge" requirement in § 1324, but in other contexts the court has recognized that "willful blindness is equivalent to actual knowledge." *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992) (construing knowledge element in the Lanham Act). In this statutory context, however, this court concludes that "actual knowledge" must be understood to mean something more than "constructive knowledge." This is apparent, first, from the language of § 1324(a)(3); the phrase "*knowingly* hire for employment at least 10 individuals with *actual knowledge* that [they are unauthorized]" suggests that "actual knowledge" is something more than general "knowing." *See Adler v. Northern Hotel Co.*, 175 F.2d 619, 621 (7th Cir. 1949) ("[E]very word used [in a statute] is presumed to have

10

meaning and purpose, for Congress is not to be thought by the courts to have used language idly."). Additionally, the implementing regulation for 8 U.S.C. § 1324a—a closely related provision that focuses exclusively on the employment of aliens—defines "knowing" as "having actual or constructive knowledge." 8 C.F.R. § 274a.1. This disjunctive makes no sense if constructive knowledge means the same thing as actual knowledge. Given the language and structure of § 1324, then, the court concludes that the standard of proof must be one of actual knowledge, not mere constructive knowledge. Therefore, even if Defendants had constructive knowledge that their employees were illegally brought into the country, Plaintiff has produced no evidence that Defendants had actual knowledge of their illegal entry.

Plaintiff's theory is essentially that Defendants utilized a workforce of largely unauthorized workers to depress wages and enable it to underbid Plaintiff and other construction firms. Plaintiff has not shown, however, that Defendants actually knew that at least ten employees were brought into the United States unlawfully. The court's conclusion that the alleged conduct does not constitute a violation of § 1324(a)(3) is bolstered by the consideration of a closely related immigration provision, 8 U.S.C. § 1324a. That statute makes it unlawful "to hire, or to recruit or refer for a fee, for employment in the United States an alien knowing the alien is an unauthorized alien . . . with respect to such employment . . . ." 8 U.S.C. § 1324a(a)(1)(A). The standard of § 1324a is thus lower than the standard of § 1324(a)(3): there is no requirement that the defendant hire at least ten workers; no requirement of "actual" knowledge; and no requirement that the defendants have any knowledge of how the employee was brought into the country. Notably, § 1324a is *not* a predicate act for RICO; Plaintiff's interpretation of § 1324(a)(3), which dilutes the knowledge and "brought in" requirements, therefore practically imports § 1324a(a)(1)(A) into RICO. The reading of § 1324(a)(3) that better accords with both the language and the statutory structure is that Defendants must have actual knowledge that the employees were brought into the country in violation of § 1324(a). Indeed, the titles of the two statutes make it clear that RICO intended to

target the "[b]ringing in and harboring of certain aliens" (§ 1324) rather than merely the "[u]nlawful employment of aliens" (§ 1324a). Applying all reasonable inferences in Plaintiff's favor, the evidence shows, at most, violations of § 1324a, but not § 1324.

Finally, in light of the higher standards contained in § 1324(a)(3), it is reasonable to conclude that the statutory drafters intended to apply RICO to § 1324(a)(3) only, and not § 1324a. RICO's provision for treble damages in civil suits is one of the strictest penalties that federal civil law imposes, and Congress may well have intended that only the more egregious immigration violations—those where, given the knowledge requirement, the defendants themselves are often directly responsible for illegally bringing the aliens into the country—would draw RICO's strict penalties. Plaintiff has not presented sufficient evidence to show a genuine dispute either that Defendants possessed actual knowledge that at least ten of its employees were brought into the United States in violation of § 1324(a) or that at least ten of those employees actually were brought into the country illegally. Defendants are therefore entitled to summary judgment on Plaintiff's § 1962(c) claim.[7]

## II.    1962(d)

Defendants are also entitled to summary judgment on Plaintiff's conspiracy claim. Conspiring to violate another provision of RICO is itself a RICO violation. *See* 18 U.S.C. § 1962(d).

---

[7] Having granted summary judgment on this basis, the court need not reach Defendant's argument that Plaintiff can not show that his injuries were proximately caused by the alleged RICO violation. The court nevertheless notes its skepticism that the Supreme Court's decision in *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) would preclude a suit by a private party that is directly harmed by a violation of § 1324(a)(3). Had Plaintiff, who was the second highest bidder on the Kedzie Project, been able to demonstrate a violation of § 1324, it could have satisfied the three factors identified by the *Anza* Court to show that its injury was sufficiently direct: first, that the injury was not too attenuated from the RICO violation; second, that there was no risk of duplicative recovery; finally, that there is no more directly harmed party than the plaintiff. *See Anza*, 547 U.S. at 457-60. The court does not construe anything in *Anza* to disrupt the sound reasoning of the Second Circuit in *Commercial Cleaning Services, L.L.C. v. Colin Service Systems, Inc.*, 271 F.3d 374 (2d Cir. 2001), that a business competitor may be sued under RICO for violations of § 1324 that are directly attributable to the plaintiff's lost business.

Here, however, Plaintiff has produced no evidence to show that an agreement existed between Defendants to violate § 1324(a)(3), the RICO predicate act Plaintiff claims was violated. As discussed above, § 1324(a)(3) requires that the employees be brought into the country illegally, and Plaintiff cannot show, by any reasonable inference, that Defendants conspired to obtain such workers. Even if Defendants did agree to hire undocumented workers to undercut its competitors in the market, this does not constitute a conspiracy to violate § 1324(a)(3) without any showing that Defendants even thought about how their workers came to the country. At most, Plaintiff's evidence might show a conspiracy to violate 8 U.S.C. § 1324a, which prohibits the knowing hiring of unauthorized workers. This agreement cannot sustain a RICO conspiracy claim, however, because § 1324a is not a predicate act for RICO. Therefore, Defendants did not "conspire to violate any" RICO provision, and they are entitled to summary judgment on the RICO conspiracy claim.[8]  18 U.S.C. § 1962(d).

## CONCLUSION

Defendants' Motion for Summary Judgment [91] is granted.

ENTER:

Dated: July 23, 2009

_____
REBECCA R. PALLMEYER
United States District Judge

---

[8] Section 1324a does not create a private right of action enforceable by parties adversely affected by a violation of the statute.